| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **SOUTHERN DISTRICT OF NEW YORK** | **FOR PUBLICATION** |

-----------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| Quebecor World (USA), Inc., *et al.*, | Case. No. 08-10152 (SHL) |
| Debtors. | (Jointly Administered) |

-----------------------------------------------------------------x

Eugene I Davis, as Litigation Trustee for the
Quebecor World Litigation Trust,

                Plaintiff,

    v.                                                    Adv. No. 10-02212 (SHL)

R.A. Brooks Trucking, Co., Inc.,

                Defendant.

-----------------------------------------------------------------x

## MEMORANDUM OF DECISION

A P P E A R A N C E S:

A S K Financial LLP
Attorneys for Eugene I. Davis, as Litigation Trustee for the Quebecor World Litigation Trust
By:    Joseph L. Steinfeld, Jr. Esq.
         John T. Siegler, Esq.
         Kara E. Casteel, Esq.
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121

Edward E. Neiger, Esq.
151 West 46th Street. 4th Floor
New York, NY 10036

Jones & Associates
Attorneys for R.A. Brooks Trucking, Inc.
By:    Roland G. Jones, Esq.
1230 6th Avenue 7th Floor
New York, NY 10020

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

  Before the Court is a motion for summary judgment filed by plaintiff Eugene I. Davis as Litigation Trustee for the Quebecor World Litigation Trust (the "Plaintiff" or "Trustee") in the above captioned adversary proceeding. Plaintiff seeks to avoid and recover ten alleged preferential transfers totaling $117,370.05 made by Quebecor World (USA), Inc. (the "Debtor") in the above-captioned Chapter 11 cases to R.A. Brooks Trucking Co., Inc. ("R.A. Brooks" or "Defendant") during the 90 day period before the Debtor filed its Chapter 11 case plus prejudgment interest of $15,191.09. Defendant opposed the motion and filed a cross motion for summary judgment. For the reasons set forth below, the Court grants Plaintiff's motion for summary judgment in large part and denying Defendant's motion for summary judgment.

## BACKGROUND

  On January 21, 2008, the Debtor filed the underlying bankruptcy case under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Petition Date"). On May 18, 2009, the Debtor filed its Third Amended Joint Plan of Reorganization of Quebecor World (USA), Inc. and Certain Affiliated Debtors and Debtors-In-Possession (the "Plan"). On July 2, 2009, this Court entered the Findings of Fact, Conclusions of Law, and Order Confirming the Plan (the "Plan").

  Pursuant to the Plan, a litigation trust administered by Plaintiff was created to pursue certain claims as defined under the terms of Plan. On January 14, 2010, the Plaintiff filed an adversary proceeding to avoid ten preferential transfers totaling $117,370.05 made by the Debtor to R.A. Brooks within 90 days of the commencement of the Debtor's Chapter 11 case. Specifically, the Plaintiff's complaint seeks to avoid the transfers pursuant to 11 U.S.C. Sections 547, 548, 549, and 502, and to recover the property transferred pursuant to 11 U.S.C. Section 550. In a subsequently filed stipulated order, the Plaintiff agreed to drop its claims under

2

Sections 548 or 549 of the Bankruptcy Code. *See So Ordered Stipulation Dismissing Certain Claims* (ECF. No. 53). As a result, the Plaintiff only seeks remedies pursuant to Sections 502, 547, and 550 of the Bankruptcy Code to avoid certain transfers made during the Preference Period.

There are no material facts in dispute. The Debtor is a corporation engaged in industrial and commercial printing with its principal place of business located at 150 E. 42nd Street, New York, N.Y. 10017. Affidavit of Charles Brooks ¶3.[1] The Defendant is a company engaged in the business of supplying transportation services to its customers with its principal place of business located at 5500 Highway 161, North Little Rock, AR 72117. Affidavit of Charles Brooks ¶4. The relevant facts regarding the parties' relationship are undisputed. The Debtor and Defendant began their business relationship in 2002 and it continued until the date of petition. Affidavit of Charles Brooks ¶5. There was no written contract between Defendant and the Debtor but the Defendant's invoices stated that payment was due within ten days of receipt. Affidavit of Charles Brooks ¶6. The Debtor made payments by check that always matched the amounts on the invoices. The Debtor sent Defendant a remittance stub with its checks that indicated to which invoices the check payments applied. Affidavit of Charles Brooks ¶8. The parties agree that during the 90 days on or before the Petition Date (the "Preference Period") the Debtor made ten transfers to Defendant totaling $156,130.05, on account of an antecedent debt, from Debtor's corporate banking account. Davis Decl. ¶¶7-11. The parties also agree that the Defendant is an unsecured creditor that did not hold a perfected security interest in the assets of the Debtor with respect to the transfers, and that unsecured creditors will receive less than a 100% distribution under the Plan. *See* Davis Decl. ¶¶13-14. Prior to the bankruptcy filing, the Debtor owed

---

[1] The two affidavits cited in this Decision were submitted by the parties in support of their respective motions. *See* Docket No. 44 (Declaration of Eugene I. Davis) and Docket No. 45 (Affidavit of Charles Brooks).

$38,760 to the Defendant for services rendered to the Debtor in the 90 days prior to the filing. *See* Exhibit "F" to the Affidavit of Charles Brooks.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a) (made applicable to the adversary proceeding by Fed. R. Bankr. P. 7056). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Ames Dep't Stores, Inc. v. Wertheim Schroder & Co., Inc.*, 161 B.R. 87, 89 (Bankr. S.D.N.Y. 1993). Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence to demonstrate that there is a genuine issue of fact for trial. *See Celotex*, 477 U.S. at 323. If the non-moving party fails to make such a showing, then the moving party is "entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56(e).

**A. Stern v. Marshall**

Because this Court is adjudicating a motion for summary judgment, it must consider whether it has the constitutional authority to issue a final decision consistent with *Stern v. Marshall*, 131 S. Ct. 2594, 2609 (2011). In *Stern*, the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620. The

4

decision in *Stern* is understood in this district to mean that a bankruptcy court lacks final adjudicative authority over a core claim where all of the following three conditions are met: "1) the claim at issue did not fall within the public rights exception; 2) the claim would not necessarily be resolved in ruling on a creditor's proof of claim; and 3) the parties did not unanimously consent to final adjudication by a non-Article III tribunal. *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 467 B.R. 712, 719-720 (S.D.N.Y. 2012) (internal citations and quotations omitted).

      In this case, the Defendant has filed a proof of claim. *See* Davis Decl., Ex. F. The Plaintiff's claims would necessarily be resolved in ruling on the Defendant's proof of claim as a result of Section 502(d) of the Bankruptcy Code, which provides that "the court shall disallow any claim of any entity . . . that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title." 11 U.S.C. § 502(d). Accordingly, the Court has the constitutional authority to issue a final judgment in this action. *See Katchen v. Landy*, 382 U.S. 323, 330-31, 335 (1966) (holding that bankruptcy courts have authority to decide preference actions where the defendant has filed a proof of claim); *Langenkamp v. Culp*, 498 U.S. 42, 45 (1990) (holding that a defendant in a preference action that has filed a proof of claim is not entitled to a jury trial).

**B. Preferential Transfers and the Ordinary Course of Business Defense**

      To be recoverable as a preferential transfer, a payment must satisfy all of the requirements of 11 U.S.C. Section 547(b). The Trustee bears the burden of proving the transfers were:

5

    (1) to or for the benefit of a creditor;

    (2) for or on account of an antecedent debt owed by the debtor before such Transfers were made;

    (3) made while the debtor was insolvent;

    (4) on or within ninety (90) days before the date of filing of the petition; and

    (5) enable the benefited creditor to receive more than such creditor would have received had the case been a chapter 7 liquidation and the creditor not received the transfer.

11 U.S.C. § 547(b).

Here, it is undisputed that the Debtor's payments to Defendant meet the criteria of Section 547(b), and therefore are preferences as defined by the Code. Defendant argues that, although it received preferential payments, those payments fall under the so called "ordinary course of business" exception in 11 U.S.C. Section 547(c)(2) that makes them unrecoverable by the Trustee. Section 547(c)(2) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), provides that:

    (c) The trustee may not avoid under this section a transfer –

        (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was –

            (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or

            (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2). [2]

The BAPCPA Amendments made the test for an ordinary course of business defense disjunctive, allowing a defendant to prevail by proving either the so called "subjective" test

---

[2] As the wording of the subparts was not changed by BAPCPA in 2005, the case law prior to BAPCPA's enactment as to the requirement of the section remains good law.

6

under Section 547(c)(2)(A), or the so called "objective" test under Section 547(c)(2)(B). *See Jacobs v. Gramercy Jewelry Mfg. Corp. (In re Fabrikant & Sons, Inc.)*, No. 06-12737, 2010 WL 4622449, at *2 (Bankr. S.D.N.Y. Nov. 4, 2010).

The ordinary course of business exception to preference liability protects "recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee." *Official Comm. Of Unsecured Creditors of Enron Corp. v. Martin (In re Enron Creditors Recovery Corp.)*, 376 B.R. 442, 459 (Bankr. S.D.N.Y. 2007) (quoting *Sender v. Heggland Family Trust (In re Hedged-Investments Assocs.)*, 48 F.3d 470, 475 (10th Cir. 1995)). The purpose of the exception is to "leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or [its] creditors during the debtor's slide into bankruptcy." *Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 41 (2d Cir. 1996) (quoting H.R. Rep. No. 95-595 (1978) at 373, *Reprinted in* 1978 U.S.C.C.A.N. 5963, 6329).

A defendant bears the burden of proving its affirmative defense by a preponderance of the evidence. *Id.* at 39; 11 U.S.C. § 547(g). The Defendant here did not supply evidence of "ordinary business terms," a phrase in subsection (B) that refers to the relevant industry practices, but instead invokes subsection (A) that applies to transfers "made in the ordinary course of business or financial affairs of the debtor and the transferee." 11 U.S.C. § 547(c)(2)(A). This section "requires an examination of whether a transfer was ordinary between the parties to the transfer." *Daly v. Radulesco (In re Carrozzella & Richardson)*, 247 B.R. 595, 603 (B.A.P. 2d Cir. 2000); *see also In re Enron Creditors Recovery Corp.*, 376 B.R. at 459 (stating that the subjective test focuses solely on the prior dealings of debtor and creditor). So

7

while a late payment is usually nonordinary, the defendant can rebut this presumption if late payments were the standard course of dealing between the parties. *See Id.* (quoting 5 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 504.04[2][ii], at 547–55 (16th ed. 2010) ("COLLIER")). In determining whether a transfer satisfies the requirements of Section 547(c)(2)(A), courts examine several factors including "(i) the prior course of dealing between the parties, (ii) the amount of the payment, (iii) the timing of the payment, (iv) the circumstances of the payment, (v) the presence of unusual debt collection practices, and (vi) changes in the means of payment." *Buchwald Capital Advisors LLC v. Metl-Span I., Ltd. (In re Pameco Corp.)*, 356 B.R. 327, 340 (Bankr. S.D.N.Y. 2006); *Official Comm. of Unsecured Creditors of 360networks (USA) Inc. v. U.S. Relocation Servs. (In re 360networks (USA) Inc.)*, 338 B.R. 194, 210 (Bankr. S.D.N.Y. 2005); *see also Hassett v. Goetzmann (In re CIS Corp.)*, 195 B.R. 251, 258 (Bankr. S.D.N.Y. 1996) (stating that the court typically examines several factors including the prior course of dealing between the parties, the amount of the payment, the timing of the payment, and the circumstances surrounding the payment).

The creditor must establish a "baseline of dealings" between the parties in order to "enable the court to compare the payment practices during the preference period with the prior course of dealing." *In re Fabrikant & Sons, Inc.*, 2010 WL 4622449, at *3; *Cassirer v. Herskowitz (In re Schick)*, 234 B.R. 337, 348 (Bankr. S.D.N.Y. 1999). The creditor must "demonstrate some consistency with other business transactions between the debtor and the creditor." *In re Fabrikant & Sons, Inc.*, 2010 WL 4622449, at *3. "The starting point—and often ending point—involves consideration of the average time of payment after the issuance of the invoice during the pre-preference and post-preference periods, the so-called 'average lateness' computation theory." *Id.* "To determine whether a late payment may still be

8

considered ordinary between the parties, a court will normally compare the degree of lateness of each of the alleged preferences with the pattern of payments before the preference period to see if the alleged preferences fall within that pattern." 5 COLLIER ¶ 504.04[2][ii], at 547-55. Generally, this involves a comparison of the average number of days between the invoice and payment dates during the pre-preference and preference periods. *See In re Fabrikant & Sons, Inc.*, 2010 WL 4622449, at *4; *Hassett v. Altai, Inc. (In re CIS Corp.)*, 214 B.R. 108, 120 (Bankr. S.D.N.Y. 1997).

**C. Defendant's Ordinary Course of Business Defense**

The Court must first determine the appropriate pre-preference time period to use in establishing a baseline of dealings between the parties. Plaintiff's analysis uses historical data for two years reaching back to October 2005, while Defendant's analysis uses historical data for approximately one year reaching back to November 2006. The parties disagree as to the appropriate pre-preference data sufficient to establish a baseline of dealings between the parties.

The Seventh Circuit in *In re Tolona Pizza Prods. Corp.* stated that the transfers at issue should "conform to the norm established by the debtor and creditor in the period before, preferably well before, the preference period." 3 F.3d 1029, 1032 (7th Cir. 1993). Numerous decisions support the view that the historical baseline should be based on a time frame when the debtor was financially healthy. *See*, e.g., *In re Carled, Inc.*, 91 F.3d 811 (6th Cir. 1996); *In re Molded Acoustical Products, Inc.*, 18 F.3d 217 (3rd Cir.1994); *In re Meridith Hoffman Partners*, 12 F.3d 1549 (10th Cir. 1993); *Moltech Power Sys. v. Tooh Dineh Indus.,* 327 B.R. 675 (Bankr. N.D. Fla. 2005) (noting that some courts have indicated that a pre-preference baseline should be established by focusing on a period well before the debtor experienced financial problems.); *Gonzales v. DPI Food Prod. Co. (In re Furrs Supermarkets, Inc.),* 296 B.R. 33 (Bankr. D.N.M.

9

2003) (determining the comparison of ordinariness should be preferably well before the preference period and before the debtor starting experiencing financial problems).

Plaintiff used a weighted average analysis [3] that revealed a weighted average during the Preference Period of 57.16 days from invoice to payment, whereas the Defendant's analysis revealed a weighted average of 52 days during the Preference Period, a difference of five days. During the historical period, Plaintiff's analysis revealed a weighted average of 27.57 days from invoice to payment, while the Defendant's analysis revealed a weighted average of 35 days, a difference of seven days. Although the difference between looking back one or two years is not substantial, the Court adopts the longer period suggested by the Plaintiff because it more accurately reflects the parties' ordinary course of dealings during the period when the Debtor was in better financial health.

The Court turns next to the method for determining how the payments during the Preference Period measure up against the payments made during the historical period. Defendant applied the total range method, which considers any Preference Period payment ordinary as long as it was paid within the minimum and maximum days to pay during the historical period. Such a theory, however, has previously been rejected as impermissibly expanding the ranges of ordinary transactions. *See In re M. Fabrikant & Sons, Inc.*, 2010 WL 4622449, *3 n. 2.; *In re CIS Corp.* 214 B.R. at 120 (Bankr. S.D.N.Y. 1997). The Court rejects it here as well because that proposed methodology captures outlying payments that skew the analysis of what is ordinary. The Court turns instead to the more commonly used "average

---

[3] The weighted average method is a manner of calculating the average days to payments taking into account the sum of each payment by multiplying the amount of the invoice by the days it took to make payment then dividing that value by the total amount of the invoices in the data set. *Forklift LP Corp. v. Spicer Clark-Hurth (In re Forklift LP Corp.)*, 2006 U.S. Dist. LEXIS 50264, 26-27 (D. Del. July 20, 2006). The weighted average takes into account the relative invoice amount and generates an average based on the days to payment and the amount of payments.

10

lateness" method, which looks to the average time of payment after the issuance of the invoice during the historical and Preference Periods. *In re M. Fabrikant & Sons, Inc.,* 2010 WL 4622449 at *3. In deciding what payments are ordinary, a court reviews the range of payments centered around the average and also groups the payments in buckets by age. *See In re Hechinger Inv. Co. of Delaware, Inc.*, 489 F.3d 568, 578 (3d Cir. 2007); *Chapter 11 Estate Liquid. Trust v. Inserts East, Inc. (In re Philadelphia Newspapers, LLC)*, BR09-11204 SR, 2012 WL 983594, *2 (Bankr. E.D. Pa. Mar. 22, 2012).

Both Plaintiff and Defendant provided an analysis of the historical and Preference Period payment history between the parties by using the average lateness method, grouping the payment by age, and providing a weighted average. The Plaintiff here is not seeking to recover any payments made within 11 to 35 days of the invoice date because more than 80 percent of the historical payments were made during that time frame. During the Preference Period, however, few payments were made during that period, with most payment instead coming in the range of 46 to 60 days after the invoice. Pl. Ex. G to Motion for Summary Judgment. Thus, there was a significant disparity between the average payment times during the historical period and the Preference Period. Plaintiff's analysis revealed that the average days to payment was 27.56 days during the historical period compared to 57.16 days during the Preference Period, or a difference of 29.60 days on average. *Id.* Furthermore, Plaintiff's bucketing analysis— examining payments by grouping—revealed that 88 percent of the amount paid during the historical period were paid between 11 and 40 days after receipt of invoice, whereas only 22 percent of the amount paid during the Preference Period were paid during the same range. Pl. Ex. H to Motion for Summary Judgment.

11

While courts generally permit some deviation from the historical average, a disparity of this magnitude cannot be considered ordinary. *See In re Fabrikant & Sons, Inc.*, 2010 WL 4622449, at *3 (citing *Off. Plan Comm. v. Expeditors Int'l of Wash, Inc. (In re Gateway Pac. Corp.),* 153 F.3d 915, 918 (9th Cir. 1998) (payments not ordinary when there is a 19-day difference between the time to payment during the historical period and preference period); *Official Comm. of Unsecured Creditors v. CRST, Inc. (In re CGG 1355, Inc.)*, 276 B.R. 377, 383-84 (Bankr. D.N.J. 2002) (not ordinary when payments made, on average, 89.50 days after the invoice date during the preference period compared to average of 66.47 days during the parties' four-year business relationship and 73.44 days during the last full year of the relationship)[23 day and 16 day difference]); *In re CIS Corp.*, 214 B.R. at 120 (payments not ordinary where paid, on average 51 days after the due date during the pre-preference period and 80 days after the due date during the preference period). [29 day difference]).

Considering the average payment time of about 27 days during the historical period and the grouping of payments by buckets, the Court finds that payments up to 45 days should be considered ordinary under Section 547(c)(2)(A) and not subject to avoidance. *See In re Fabrikant & Sons, Inc.*, 2010 WL 4622449, at *4. These payments amount to approximately $38,760.00, leaving the remaining payments subject to avoidance because they were not made in the ordinary course of business under Section 547(c)(2)(A).[4]

**D. Pre-Judgment Interest**

Finally, the Court grants the Trustee's request for pre-judgment interest, which is within a court's discretion for actions brought under 11 U.S.C. Section 547. *In re Pameco Corporation*,

---

[4] The adversary claimant sought recovery of $156,130.05 in transfers. But the parties subsequently agree that $38,760 is subject to the so called new value defense under Section 547(c)(4), which provides that a transfer is not avoidable where, generally speaking, a creditor gave "new value to or for the benefit of the debtor." Given the parties' agreement, there is no issue for the Court to resolve on the new value defense.

12

356 B.R. 327, 342 (Bankr. S.D.N.Y. 2006); *In re Cyberrebate.com, Inc.*, 296 B.R. 639, 645 (Bankr. E.D.N.Y. 2003). Pursuant to Section 550(a), a plaintiff can recover a preferential transfer or its value. 11 U.S.C. § 550(a). The policy of Section 550 is to restore to the estate the full value of the asset transferred to the preferred creditor, thereby compensating the estate for the loss of the time value of the asset. *In re L&T Steel Fabricators, Inc.*, 102 B.R. 511, 521 (Bankr. N.D.La. 1989). Value includes pre-judgment interest from the date of the transfer. *Id.* The time value of money is an asset of the estate that should be recovered for the benefit of all creditors under the policy in the Bankruptcy Code, which favors equal treatment for all creditors of a bankruptcy estate. By awarding pre-judgment interest from the date of a preferential transfer, both the estate and the transferee are restored to the economic position each were in prior to the preferential transfers. Pre-judgment interest is not a penalty, but rather is viewed as delayed damages to be awarded as a component of compensation to the prevailing party. *General Motors Corp. v Devex Corp.*, 461 U.S. 648, 654 n.10 (1983); *see also West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987).

## CONCLUSION

For the reasons stated above, the Court grants the Plaintiff's motion for summary judgment in large part and denies the Defendant's motion. The Plaintiff shall settle a proposed order on three days' notice.


Dated: New York, New York
       April 23, 2013


                                        */s/ Sean H. Lane*
                                        UNITED STATES BANKRUPTCY JUDGE